UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MAR 4 2024 PM2:51
FILED_M- USDC - BPT- CT

LARRY LAVONNE BERRY,
    Plaintiff,
    v.
OFFICER GOLDEN, OFFICER AMARILLO,
LIEUTENANT GILLESPIE, OFFICER PENALO,
OFFICER MARSHALL, OFFICER J. RUSSELL,
HEALTH SERVICE ADMINISTRATOR DUKATE,
ASSISTANT HEALTH SERVICES ADMINISTRATOR KNIBBS
UNITED STATES OF AMERICA,
P.A. WERNER ESCOBAR,
    Defendants.

:
:
:
:
:
:
:
:
:
:
:

Case No: _____

CIVIL COMPLAINT
DEMAND A TRIAL BY JURY

CIVIL COMPLAINT

Plaintiff hereby alleges:

JURISDICTION AND VENUE

1. This is a civil action authorized by Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) and the Federal Tort Claims Act to redress the depriviation, under the color of law, rights secured by the constitution of the United States of America. The Court has jurisdiction under 28 U.S.C. §1331 and §1343(a)(3). Plaintiff seeks compensatory damages, punitive damages, and injunctive relief which is authorized by §28 U.S.C. §§2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedures.

2. The District of Connecticut is an appropriate venue under 28 U.S.C. §1391(b)(2) because it is where the events giving rise to this claim occured.

II. PARTIES

3. Plaintiff, Larry Berry, is and was at all times mentioned a prisoner of the Federal Bureau of Prisons. Plaintiff is currently incarcerated at FCI ~~Petersburg~~. Danbury

4. Defendant Officer Golden, was at all times relevant an officer of FCI Danbury.

1.

5. Defendant Officer Amarillo, was at all times relevant an officer of FCI Danbury.

6. Defendant Officer Penalo, was at all times relevant an officer of FCI Danbury.

7. Defendant Officer Marshall, was at all times relevant an officer of FCI Danbury.

8. Defendant Officer Russell, was at all times relevant an officer of FCI Danbury.

9. Defendant P.A. Werner Escobar was at all times relevant Plaintiff's primary health care provider and oversaw directly all of Plaintiff's medical care.

10. Defendant Lieutenant Gillispie, was at all times relevant a lieutenant of FCI Danbury.

11. Defendant Health Services Administrator Dukate is the head of the health services department in FCI Danbury and oversees all operations of the medical department.

12. Defendant Assistant Health Services Administrator Knibbs is the assistant to HSA Dukate and has been personally involved in Larry Berry's treatment.

13. Defendant United States of America is being sued for the actions of its agent, FCI Danbury of the Federal Bureau of Prisons for the tortious action against him.

FACTS

14. On or around 10/10/2023, Plaintiff was rushed to the local hospital for heart/chest pains.

15. Defendant Golden was assigned to escort Plaintiff and watch over him.

16. Plaintiff was diagnosed with a rare heart condition called Brugada Syndrome.

17. Defendant Golden took out his cell phone and Googled the condition and explained that it is rare but serious according to a website on his phone.

18. Defendant Golden left at around 10:30pm.

19. Plaintiff was later discharged from the hospital at approximately 12:00am.

20. Around 12:45am, Plaintiff returned to FCI Danbury.

21. Around 1:07am, Defendant Penalo radioed to the compound officer, Defendant Golden, and the J unit officer Defendant Amarillo, to inform them that Plaintiff was going back

to his housing unit (J) as he just returned from his hospital trip.

22. When Defendant Amarillo stepped out of the unit to receive Plaintiff, Defendant Penalo ordered Plaintiff to walk to his housing unit unescorted.

23. While Plaintiff was walking back to his unit, he began feeling dizzy and stopped walking to get himself together.

24. When he continued, the dizziness got worse and he reached for a nearby bench to steady himself, but instead lost consciousness.

25. When he woke up Defendants Golden, Amarillo, and Russell were on his back placing him in handcuffs.

26. Defendant Golden was stating "This stupid motherfuck's high on K-2."

27. Plaintiff was punched in the face, had knees strike his rib and torso area, and had severe pressure on his back from the Defendants' kneeling on him despite that fact that Plaintiff was unresponsive and already handcuffed.

28. Defendants Golden, who was just with Plaintiff at the hospital, and Amarillo, who heard that he just returned from the hospital on the radio, had known that Plaintiff could not have gotten high while he was being observed by officers, strip searched, and never had the opportunity to make it back to his housing unit to get drugs.

29. The Defendants chose to enforce their private agenda and utilize this situation to assault Plaintiff despite knowledge of his rare heart condition.

30. At some point Defendant Gillespie walked out and ordered the officers to remove the handcuffs and get off Plaintiff because he just returned from the hospital.

31. The officers involved tried to explain to the Lieutenant that Plaintiff was high.

32. Defendants Marshall and Penalo were present and watched the situation unfold and did not try to intervene to stop the attack.

33. Within 30 minutes, Plaintiff was placed in a wheelchair and rushed back to the hospital by ambulance for severe chest pains, neck pain, and back pain.

34. The attack by the officers had exacerbated and aggravated Plaintiff's serious heart

condition.

35. Plaintiff had to have a surgery and they placed a heart monitor in Plaintiff's chest so they could evaluate the best course of action.

36. Per hospital instructions, Plaintiff's heart monitor data was to be read and sent to the hospital every 24 hours.

37. Over 134 days have passed and not once have they transmitted the data or followed the cardiologist's instructions.

38. Plaintiff has since been rushed out six times to the hospital, by ambulance due to his severe heart issues, who continues to be appalled because they have no data and can not effectively operate on his heart.

39. For example, on 2/18/2024, Plaintiff was rushed to the hospital and when they took his blood pressure it was 218 over 189 and he was in afibulation. Plaintiff had to take 3 nitroglycerin pills and pain pills. His heart rate was at 114. The cardiologist could not perform a surgery or create a treatment plan without the monitor data.

40. Defendants Heal h Services Administrator ("HSA") Dukate, ssistant HSA ("AHSA") Knibbs, and Escobar have informed Plaintiff that they are working on a solution to monitor Plaintiff's heart.

41. Defendants HSA Dukate and AHSA Knibbs, stated that "normally [the monitor] works best on WIFI. The Institution doesn't have WIFI available." While that may be the issue, that is a non-medical reason to deny Plaintiff the life-saving care that he needs.

42. On 11/5/2023, Plaintiff has formally and specifically requested that the Warden retain the camera footage from the incident as it happened in clear view of at least 3 cameras in the lit up compound area.

## COUNT 1 – Deliberate Indifference'

43. Defendants Amarillo, Golden, and Russell were deliberately indifferent to Plaintiff's medical condition.

4

44. Each of the aforementioned Defendants were aware that Plaintiff had just returned from continuous observation by multiple correctional officers and was at the hospital for approximately 7 hours preceding the event.

45. Defendant Golden, in particular, was present for Plaintiff's diagnosis and looked up Brugada Syndrome on his cell phone and still chose to attack Plaintiff.

46. The Defendants disregarded that Plaintiff was suffering from a serious heart condition, concocted a story that he was high (despite him being in continuous custody for the past 7 hours), and viciously attacked Plaintiff, causing him to be rushed back the hospital and to have a heart monitor implanted in his chest.

## COUNT 2 – Deliberate Indifference

47. Defendants HSA Dukate, AHSA Knibbs, and Escobar are aware of Plaintiff's rare, but serious, diagnosis, aware of his assault, and are aware that he needs to have his heart monitored every 24 hours.

48. The medica. Defendants' excuse that FCI Danbury doesn't have WIFI available is not a medically sound reason for denying him life saving treatment; over 130 days is unacceptable to deny Plaintiff life saving medial care.

49. The Defendants need to do something if Danbury does not have the capability to care for Plaintiff and their decision to keep him there -- with a risk of death/serious medical complications -- shows a clear disregard for Plaintiff's health and safety.

## COUNT 3 – Excessive Force

50. Defendants Amarillo, Golden, and Russell viciously attacked Plaintiff who was unresponsive and mechanically restrained.

51. Plaintiff could not have resisted any orders or attempts to restrain him as he was already unresponsive.

52. The Defendants were just upset because, contrary to all of the information which they

were aware, they wanted to believe he was using drugs and decided that attacking him was the proper "justice" Plaintiff deserved.

### COUNT 4 - Failure to Protect/Intervene

53. Defendants Penalo and Marshall were both present during the time of the attack and, instead of helping Plaintiff, watched and therefore acquiesced to the vicious beating of Plaintiff.

54. The aformentioned Defendants took no steps to end the assault.

55. Defendant Penalo, while Plantiff was being wheeled back to R&D to be transported to the hospital kept saying to Plaintiff, "Berry, I did not touch you."

56. All of this happened on Lieutenant Gillespie's watch.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

### PRAYER FOR RELIEF

Plaintiff hereby prays for relief in that:

a) Defendants collectively compensate Plaintiff in the amount of $3,200,000.00;

b) Defendants collectively be ordered to pay $1,200,000.00 in punitive damages;

c) The Defendants be suspended without pay and retrained or fired from their positions;

d) Plaintiff be awarded the cost of suit;

and e) Any other and further relief that this court deem necessary.

Executed on this 28, day of February, 2024.

Respectfully Submitted,

Larry Lavonne Berry

6.