UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LARRY LAVONNE BERRY, ) | CASE NO. 3:24-cv-292 (KAD) |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| GOLDEN, *et al.*, ) | JUNE 6, 2024 |
| *Defendants*. ) | |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge:

Plaintiff Larry Lavonne Berry ("Berry"), currently confined at FCI Milan in Milan, Michigan, filed this complaint *pro se* under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA") against ten defendants: Officers Golden, Amarillo, Penalo, Marshall, and J. Russell; Lieutenant Gillespie; Health Services Administrator Dukate; Assistant Health Services Administrator Knibbs; PA Werner Escobar; and the United States of America. He seeks damages and injunctive relief related to his confinement at FCI Danbury.

**Standard of Review**

Under § 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants

fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On October 10, 2023, Berry was rushed to the local hospital for complaints of chest pains. ECF No. 1 at 2 ¶ 14. He was diagnosed with Brugada Syndrome, a rare heart condition. *Id.* at ¶ 16.

Officer Golden was assigned to escort Berry to the hospital and "watch over him." *Id.* at ¶ 15. Officer Golden used his phone to research the condition and told Berry that it was rare but serious. *Id.* at ¶ 17. Officer Golden left Berry about 10:30 p.m. *Id.* at ¶ 18. At about midnight, Berry was discharged and returned to FCI Danbury. *Id.* at ¶¶ 19–20.

Upon his arrival at FCI Danbury, Officer Penalo radioed Officer Golden, the compound officer, and Officer Amarillo, the unit officer, and told them that Berry was returning to his housing unit. *Id.* at ¶ 21. Officer Penalo told Berry to walk to his unit unescorted. *Id.* at 3 ¶ 22. Along the way, Berry became dizzy and lost consciousness. *Id.* at ¶¶ 22–24.

When Berry regained consciousness, Officers Golden, Amarillo, and Russell were on his back, handcuffing him, and Officer Golden commented that Berry was "high on K-2." *Id.* at ¶¶ 25–26. Berry was punched in the face, struck with knees in his ribs and torso, and had severe pressure put on his back. *Id.* at ¶ 27. Berry contends that Officers Golden and Amarillo were aware that he had just returned from the hospital and had no opportunity to take drugs. *Id.* at ¶ 28.

At some point, Lieutenant Gillespie arrived and ordered the officers to remove the handcuffs and get off Berry because he had just returned from the hospital. *Id.* at ¶ 30. The officers tried to explain that Berry was on drugs. *Id.* at ¶ 31. Officers Marshall and Penalo were present but did not

intervene. *Id.* at ¶ 32.

Berry returned to the hospital by ambulance thirty minutes later with complaints of severe chest, neck, and back pain. *Id.* at ¶ 33. The assault aggravated Berry's heart condition and he was required to undergo surgery for placement of a heart monitor. *Id.* at 3–4 ¶¶ 34–35.

Although the hospital instructed that the heart monitor data be transmitted to the hospital daily, that has never happened. *Id.* at 4 ¶¶ 36–37. Berry has returned to the hospital six times for heart issues, but Berry alleges that the doctors cannot effectively operate because they have not been provided with the heart monitor data. *Id.* at ¶ 38.

Defendants Dukate, Knibbs, and Escobar have told Berry that they are working on a solution to monitor Berry's heart. *Id.* at ¶ 40. Defendants Dukate and Knibbs told him that the monitor works best with Wi-Fi, but Wi-Fi is not available at FCI Danbury. *Id.* ¶ 41.

**Discussion**

Berry asserts four claims: (1) Defendants Amarillo, Golden, and Russell were deliberately indifferent to Berry's medical condition; (2) Defendants Dukate, Knibbs, and Escobar were deliberately indifferent to Berry's medical need to have his heart monitored daily; (3) Defendants Golden, Amarillo, and Russell used excessive force against Berry; and (4) Defendants Penalo and Marshall failed to intervene and protect Berry from the assault.

*Bivens Claims*

A *Bivens* claim is "the federal analog to suits brought against state officials under . . . § 1983." *Iqbal*, 556 U.S. at 675–76. In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)).

A *Bivens* claim may be brought against a federal official in his individual capacity, rather than his official capacity, and only for his own acts. *See FDIC v. Meyer*, 510 U.S. 471, 485–86 (1994) (*Bivens* authorized lawsuits for monetary damages against federal officials in their individual capacities only); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."). Berry does not specify whether he has named the individual defendants in their individual or official capacities. Accordingly, the Court considers Defendants to be named in their individual capacities only. Further, because the only remedy in a *Bivens* is for money damages, any *Bivens* claim against the United States and any request for injunctive relief based on the *Bivens* claims are dismissed.

The Supreme Court has recognized a *Bivens* claim under the Fourth Amendment's Search and Seizure Clause, the Eighth Amendment's Cruel and Unusual Punishment Clause, and the equal protection component of the Fifth Amendment's Due Process Clause. *See Bivens*, 403 U.S. at 389, 397 (finding a private cause of action under the Fourth Amendment for an unreasonable search and seizure claim against FBI agents for handcuffing a man in his own home without a warrant); *Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a *Bivens* claim under the equal protection component of the Fifth Amendment's Due Process Clause for gender discrimination arising from the defendant congressman's decision to fire his female secretary); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a *Bivens* claim under the Eighth Amendment's prohibition against cruel and unusual punishment arising from prison officials' failure to treat an inmate's asthma that resulted in the inmate's death). Beyond these three circumstances, the Supreme Court has declined to recognize an implied cause of action for damages under the Constitution. *See Ziglar* v. *Abbasi*, 582 U.S. 120, 131 (2017).

In *Ziglar*, the Supreme Court made clear that courts should not find rights and remedies

4

pursuant to *Bivens* beyond the three contexts already recognized. *Id.* at 135 ("Given the notable change in the Court's approach to recognizing implied causes of action, however, the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."). The Supreme Court also set forth a two-step analysis required before finding a *Bivens* cause of action in a new context or against a new category of defendants: the court must first determine whether the context in which the claim arises is new. *Id.* at 139. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Id.*

If a case implicates a new *Bivens* context, the court then must consider whether there are "special factors counselling hesitation" in extending the *Bivens* remedy "in the absence of affirmative action by Congress." *Id.* at 136 (cleaned up). The special factors inquiry requires courts to "consider the risk of interfering with the authority of the other branches, and . . . [to] ask whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[]' . . . and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Hernandez v. Mesa*, 589 U.S. 93, 99–103 (2020) (quoting *Ziglar*, 137 S. Ct. at 137). However, if "Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Ziglar*, 582 U.S. at 137 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)) (alteration omitted).

### Excessive Force and Failure to Intervene Claims

Defendants here are federal correctional officers, while the defendants in *Bivens* were federal FBI agents. Where a claim includes a "new category of defendant," a *Bivens* claim is considered to arise in a new context. *Egbert v. Boule*, 596 U.S. 482, 492 (2022); *see also Schulte v. Bureau of*

*Prisons*, No. 20-cv-2795 (PGG)(GWG), 2022 WL 1468017, at *6 (S.D.N.Y. May 10, 2022) ("following *Ziglar*, courts regularly hold that a detainee's Fifth Amendment claim of excessive force by prison officials involves a new *Bivens* context").

Berry may seek relief on his excessive force and failure to intervene claims pursuant to the FTCA. Under the FTCA, Berry may obtain money damages for claims "arising . . . out of assault, battery," and other torts with regard to acts or omissions of federal officials. 28 U.S.C. § 2680(h). As noted above, where "Congress has created any alternative, existing process for protecting the injured party's interest that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Ziglar*, 582 U.S. at 137 (cleaned up). Courts in the Second Circuit have dismissed *Bivens* claims were an FTCA claim was available. *See Mendoza v. Edge*, 615 F. Supp. 3d 163, 170–71 (E.D.N.Y. 2022) (citing cases).

Berry has several alternative remedies through the FTCA, the BOP administrative remedy procedure, or, where available, a habeas petition filed pursuant 28 U.S.C. § 2241. Further, "[a]s for the special factors, ... [r]ecognizing *Bivens* claims in this context—excessive force by prison officials against inmates—would involve the judicial branch in evaluating tradeoffs and countervailing considerations that are best reserved for the executive and legislative branches." *Schulte*, 2022 WL 1468017, at *6.

The Court concludes that Berry's excessive force and failure to intervene claims are not cognizable under *Bivens*. *See Lewis v. Bartosh*, No. 22-3060-PR, 2023 WL 8613873 (2d Cir. Dec. 13, 2023) (summary order) (affirming district court's determination that claim for use of excessive force against U.S. Marshals was foreclosed by *Egbert*).

### Deliberate Indifference to Medical Needs Claims

As discussed above, *Bivens* has been extended to claims of deliberate indifference to medical

needs by medical staff at correctional facilities. *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a *Bivens* claim under the Eighth Amendment's prohibition against cruel and unusual punishment arising from prison officials' failure to treat an inmate's asthma that resulted in the inmate's death). Here, Berry asserts two claims for deliberate indifference to medical needs, one against medical staff Defendants Dukate, Knibbs, and Escobar, and the other against correctional staff Defendants Amarillo, Golden, and Russell.

To state a claim for deliberate indifference to a serious medical need, Berry must allege facts showing both that his need was serious, and that the defendant acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citations omitted).[1] There are both objective and subjective components to the deliberate indifference standard. Objectively, the alleged deprivation must be "sufficiently serious." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). A "sufficiently serious" deprivation can exist if Berry suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The defendant also must have been "subjectively reckless." *Spavone*, 719 F.3d at 138. This requires that the defendant was "actually aware of a substantial risk" that Berry would suffer serious harm as a result of the defendant's actions or inactions. *Id.* The defendant "need only be aware of the risk of harm, not intend harm," and "awareness may be proven 'from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference. *Hathaway*, 99 F.3d at 553–54.

Berry alleges that he suffers from Brugada Syndrome, a rare and serious condition. For

---

[1] Because a *Bivens* action is the non-statutory federal counterpart of a civil rights action under 42 U.S.C. § 1983, courts may look to § 1983 cases for applicable law. *See Taverez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995).

purposes of initial review, the Court assumes that Berry's condition satisfies the objective component of the deliberate indifference test. In his claim against medical staff defendants, Berry contends that they ignored orders from the hospital doctors for daily transmittal of heart monitor data for six months as of the filing of the Complaint and that the doctors are unable to operate on his heart without such data. On the strength of these allegations, the Court will permit the deliberate indifference claim against Defendants Dukate, Knibbs, and Escobar to proceed for further development of the record.

However, Berry's second deliberate indifference claim against custody staff, would extend the *Bivens* remedy to a new category of defendants. And as the Supreme Court has observed, "even a modest extension is still an extension." *Ziglar*, 582 U.S. at 147. Further, as discussed above, Berry has alternative remedies to a *Bivens* claim under, *inter alia*, the FTCA. Therefore, the Court declines to recognize a *Bivens* claim on these facts against Defendants Amarillo, Golden, and Russell. *See Churuk v. Canarozzi*, No. 22-cv-1395 (VDO), 2024 WL 2149036, at *9 (D. Conn. Apr. 2, 2024) (declining to recognize a deliberate indifference to medical needs claim against prison custody staff pursuant to *Bivens*); *Edwards v. Gizzi*, No. 20-cv-7371 (KMK), 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (declining to find new deliberate indifference to medical needs claim against court officers pursuant to *Bivens*). The *Bivens* claim against Defendants Amarillo, Golden, and Russell is dismissed.

*FTCA*

Berry states that he also brings his claims pursuant to the FTCA. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019) (citation and internal quotation marks omitted). Before the district court has subject matter jurisdiction over an FTCA claim, the plaintiff must have exhausted his administrative remedies by presenting his claim to the appropriate federal agency. *See* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages

for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.").

Berry alleges no facts suggesting that he has complied with the FTCA's exhaustion requirement. And in light of the recent nature of the allegations, it seems unlikely he has done so. Thus, Berry has not adequately invoked this Court's jurisdiction under the FTCA. *See Brownback v. King*, 592 U.S. 209, 217 (2021) ("plaintiff must plausible allege all jurisdictional elements" and, in the context of an FTCA claim, this includes all elements of a meritorious claim); *Sherman-Amin-Braddox:Bey v. McNeil*, No. 10-cv-5340 (ARR)(JMA), 2011 WL 795855, at *2 (E.D.N.Y. Feb. 25, 2011) (noting that "plaintiff bears the burden of pleading compliance with the FTCA's exhaustion requirement"). Accordingly, Berry's FTCA claims are dismissed without prejudice.

**ORDERS**

All claims against Defendants Golden, Amarillo, Gillespie, Penalo, Marshall, and Russell, and any *Bivens* claims against Defendant United States of America are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1). Any FTCA claims are DISMISSED **without prejudice** pursuant to 28 U.S.C. § 1915A(b). Berry may pursue these claims through the administrative process and if unsuccessful, may proceed to federal court. Alternatively, if Berry has exhausted his administrative remedies, he may file an Amended Complaint on or before July 7, 2024 containing allegations to that effect.

The case will proceed on the *Bivens* claim against Defendants Dukate, Knibbs, and Escobar for deliberate indifference to medical needs in their individual capacities for damages only.

The Court enters the following orders.

(1)     **The Clerk shall** prepare a summons form and send an in-person service packet for each defendant to the U.S. Marshals Service. The U.S. Marshal is directed to effect in person service on defendants Health Services Administrator Dukate, Assistant Health Services Administrator Knibbs and Physician Assistant Werner Escobar at their place of employment, FCI Danbury. The Clerk also shall deliver three copies of the summons, complaint, and this Order to the United States Attorney for the District of Connecticut, at any one of the three offices, send two copies of the summons, complaint, and this Order by registered or certified mail to the Attorney General of the United States at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530, and send a copy of the summons and complaint, and this Order by registered or certified mail to the Bureau of Prisons at 320 First Street, N.W., Washington, D.C. 20534.

(2)     **The Clerk shall** send plaintiff a copy of this Order.

(3)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date of service of the summons. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by January 6, 2025. Discovery requests need not be filed with the court.

(5)     All motions for summary judgment shall be filed by February 6, 2025.

(6)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7)     If plaintiff changes his address at any time during the litigation of this case, Local

Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendants or the attorney for the defendants of his new address.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of June 2024.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE