UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LARRY LAVONNE BERRY,     ) | |
|     *Plaintiff*,     ) | CASE NO. 3:24-cv-292 (KAD) |
|     ) | |
| v.     ) | |
|     ) | |
| GOLDEN, ET AL.,     ) | |
|     *Defendants*.     ) | OCTOBER 3, 2024 |

### MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 43)

Kari A. Dooley, United States District Judge:

    Plaintiff, Larry Lavonne Berry, a federal inmate currently incarcerated at Milan Federal Correctional Institution ("FCI Milan"), filed the Complaint *pro se* pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), and the Federal Tort Claims Act ("FTCA") against Officers Golden, Amarillo, Penalo, Marshall, and J. Russell; Lieutenant Gillespie; Health Services Administrator Dukate; Assistant Health Services Administrator Knibbs; P.A. Werner Escobar; and the United States. *See* ECF No. 1. The claims set forth in the Complaint arise from Plaintiff's confinement at Danbury Federal Correctional Institution ("FCI Danbury"), and in particular, the facility's inability to perform Wi-Fi monitoring of Plaintiff's implanted cardiac device. *Id.*

    On June 6, 2024, the Court issued an Initial Review Order regarding the Complaint. ECF No. 27. Following initial review, the only remaining claims in this action are *Bivens* claims against Defendants Dukate, Knibbs, and Escobar (collectively, "Defendants") for deliberate indifference to medical needs. *See* ECF No. 27. On August 22, 2024, in lieu of a responsive pleading, Defendants filed a Motion for Summary Judgment. *See* Defendants' Motion for Summary

Judgment ("Defs.' MSJ"), ECF No. 43.  In response, Plaintiff filed his own Motion for Summary Judgment (ECF No. 48), as well as an Amendment to Plaintiff's Response (ECF No. 50) and a reply brief in further support of his purported Motion for Summary Judgment (ECF No. 52), which the Court has collectively construed as Plaintiff's opposition to Defendants' Motion for Summary Judgment.[1]  On September 13, 2024, Defendants filed a reply brief in further support of their Motion for Summary Judgment.  ECF No. 51.  For the reasons set forth herein, Defendants' Motion for Summary Judgment is **GRANTED**.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Which facts are material is determined by the substantive law.  *Anderson*, 477 U.S. at 248.  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . ."  *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).  In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Kee v. City of New York*, 12

---

[1] Even if these filings were construed as a separate cross motion for summary judgment, any such motion would be unsuccessful insofar as Plaintiff failed to comply with the Local Rules on filing a motion for summary judgment, which require, *inter alia*, "a document entitled 'Local Rule 56(a)1 Statement of Undisputed Material Facts,' which sets forth, in separately numbered paragraphs . . . a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried."  D. Conn. L. Civ. R. 56(a)(1).

F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  He cannot "rely on conclusory allegations or unsubstantiated speculation[.]" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted).  To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**[2]

On October 10, 2023, while incarcerated at FCI Danbury, Plaintiff was rushed to a local hospital for complaints of chest pain. ECF No. 1 at ¶ 14. There, Plaintiff was diagnosed with Brugada Syndrome, a rare heart condition. *Id.* at ¶ 16. At about midnight, Plaintiff was discharged and returned to FCI Danbury. *Id.* at ¶¶ 19–20. Later that morning, Plaintiff returned to the hospital with further complaints of severe chest, neck, and back pain.[3] *Id.* at ¶ 33. At that time, he was required to undergo surgery for placement of a heart monitor. *Id.* at ¶¶ 34–35. Although the hospital instructed that FCI Danbury transmit Plaintiff's heart monitor data to the hospital on a daily basis, that has never happened. *Id.* at ¶¶ 36–37. Plaintiff has returned to the hospital six times for heart issues, and doctors cannot effectively operate because they have not been provided with the heart monitor data. *Id.* at ¶ 38. Defendants Dukate, Knibbs, and Escobar told Plaintiff that the monitor works best with Wi-Fi, but that Wi-Fi is not available at FCI Danbury and they are working on a solution to monitor his heart. *Id.* at ¶ 40–41.

---

[2] These facts have been taken from the Complaint, as well as Defendants' Local Rule 56(a)(1) Statement and the supporting exhibits filed by both parties. *See* ECF No. 44. Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)(1) Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)(3). Although Defendants informed Plaintiff of his obligation to respond to the Motion for Summary Judgment and the contents of a proper response, *see* Defendants' Certificate of Service of *Pro Se* Notice and Summary Judgment Filing (ECF No. 45), Plaintiff has not filed a compliant Local Rule 56(a)(2) Statement. Plaintiff's status as a *pro se* litigant does not excuse him from complying with the Court's procedural and substantive rules. *See Evans v. Kirkpatrick*, No. 08-CV-6358T, 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2013) (citing *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)); *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) ("when a plaintiff is proceeding *pro se*, all normal rules of pleading are not absolutely suspended.") (citation and internal quotation marks omitted). Thus, Defendants' facts, when supported by the evidence of record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)(3) ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)(1), or in the Court imposing sanctions . . .").

[3] Plaintiff alleges that his return to the hospital was due in part to an assault by previously named Defendants Golden, Amarillo, and Russell, which further exacerbated his serious heart condition. ECF No. 1 at ¶¶ 25, 27, 34. Plaintiff's excessive force claims against those Defendants were dismissed upon initial review. *See* ECF No. 27.

As relevant here, the Bureau of Prisons ("BOP") utilizes a computerized database known as SENTRY to maintain, *inter alia*, a record of all administrative remedy filings by federal inmates. Defs.' Local Rule 56(a)(1) Statement, ECF No. 44, Ex. 3 at ¶¶ 2, 5. These records indicate whether the inmate filed the remedy at the correctional facility, the Regional Office, or the Office of General Counsel ("OGC"). *Id.* at ¶¶ 5–6. These records also indicate the number of times that a particular request was submitted at that level. *Id.* SENTRY records demonstrate that Plaintiff has filed 36 requests for administrative remedies while in federal custody, 14 of which relate to events that occurred while Plaintiff was confined at FCI Danbury. *Id.* at ¶¶ 7–8.

On November 21, 2023, Plaintiff filed a grievance (No. 1182107-F1) with the Warden of FCI Danbury, regarding the facility's inability to perform Wi-Fi monitoring of his implanted cardiac device. *Id.* at ¶ 9. Plaintiff received a response from the Warden on December 13, 2023, and on January 8, 2024, he appealed the Warden's response to the BOP's Northeast Regional Office ("NERO"). *Id.* at ¶ 10; *see also* ECF No. 48 at 42. Thereafter, staff at NERO extended their time to respond to Plaintiff's appeal to March 8, 2024, and notified Plaintiff of the extension. *Id.* On February 6, 2024, during the pendency of Plaintiff's appeal to NERO, Plaintiff filed an untimely appeal to OGC. *Id.* at ¶ 11. Plaintiff's appeal to OGC was accordingly rejected as untimely on February 14, 2024. *Id.* Plaintiff was advised that NERO's response was not due until March 8, 2024, at which point Plaintiff may resubmit his appeal to OGC. *Id.* On February 28, 2024, Plaintiff commenced the instant action by filing the Complaint. *See* ECF No. 1. Staff at NERO timely provided their response to Plaintiff's appeal on March 8, 2024. *Id.* at ¶ 10. Plaintiff never appealed NERO's response to OGC, and took no further action regarding the issues raised in his initial grievance. *Id.* at ¶ 12.

**Discussion**

On August 22, 2024, Defendants filed a Motion for Summary Judgment on the grounds that 42 U.S.C. § 233(a) bars Plaintiff's *Bivens* claims against Defendants Dukate and Escobar, and that Plaintiff otherwise did not properly exhaust his administrative remedies prior to filing the instant lawsuit. *See generally* Defs. MSJ. In response, Plaintiff filed what he styled as his own Motion for Summary Judgment, as well as an Amendment to Plaintiff's Response. ECF Nos. 48, 50. Therein, Plaintiff argues that he did in fact exhaust his administrative remedies, while further purporting to describe various ways in which prison officials intentionally delayed his administrative grievance process. *See id.* Additionally, on September 30, 2024, Plaintiff filed a reply brief in further support of his purported Motion for Summary Judgment, which similarly argues that Plaintiff followed the administrative grievance process "to the letter," and emphasizes that he did not receive timely responses to his grievance forms. *See* ECF No. 52. As discussed above, the Court has construed those filings as Plaintiff's collective opposition to Defendants' Motion for Summary Judgment, and has considered the arguments set forth by Plaintiff therein in evaluating Defendants' motion.[4] For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

**Early Summary Judgment**

As a threshold matter, the Court must determine whether Defendants are permitted to seek summary judgment prior to filing their answer to Plaintiff's Complaint or otherwise engaging in

---

[4] Insofar as Plaintiff's opposition filings set forth additional allegations as to his medical treatment at FCI Danbury, the Court has disregarded them as improper. *See Avillan v. Donahue*, 483 F. App'x 637, 639 (2d Cir. 2012) (summary order) ("The district court did not err in disregarding allegations [the *pro se* plaintiff] raised for the first time in response to [defendant's] summary judgment motion."); *Wright v. Jewish Child Care Ass'n of New York*, 68 F. Supp. 3d 520, 529 (S.D.N.Y. 2014) (*pro se* plaintiffs are not permitted to assert new claims in opposition to a motion for summary judgment).

any discovery.  "When a party has not had any opportunity for discovery, summary judgment is generally premature."  *Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023) (citing *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996)).  "Indeed, 'summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'"  *Id.* (quoting *Anderson*, 477 U.S. at 250 n.5).  As such, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."  *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000).  Defendants argue that this is one of those cases, and that "additional discovery would not be relevant or necessary to resolve the issues raised on this motion" because "Plaintiff has no basis to (1) dispute the § 233(a) immunity claimed in this motion; or (2) claim he properly exhausted administrative remedies."  Defs.' MSJ at 2–3 (internal quotation marks omitted).  The Court agrees with Defendants.

Preliminarily, the Court observes that Plaintiff does not counter Defendants' argument that his *Bivens* claim against Defendants Dukate and Escobar is barred by 42 U.S.C. § 233(a), nor does he dispute any of the material facts set forth in Defendants' Local Rule 56(a)(1) Statement, including those describing Plaintiff's efforts to exhaust his administrative remedies, and in particular, the timing of those efforts.  Moreover, Plaintiff could have, but did not, invoke Rule 56(d) of the Federal Rules of Civil Procedure, which "permits a court, in the exercise of its discretion, to defer or deny a decision on summary judgment if a 'nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'"  *Lego A/S v. Best-Lock Constr. Toys, Inc.*, No. 3:11-CV-1586 (CSH), 2017 WL 6540268, at *2 (D. Conn. Dec. 21, 2017) (quoting Fed. R. Civ. P. 56(d)); *see also DePaola v. City of New York*, 586

F. App'x 70, 71 (2d Cir. 2014) (Rule 56(d) affidavit must include "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful").[5] Rather, Plaintiff argues that he "has in fact properly exhausted his administrative remedies." *See* ECF No. 48 at 2. For all of these reasons, the Court concludes that Defendants' pre-answer Motion for Summary Judgment is properly before the Court.[6]

Accordingly, the Court will now turn to the substantive merits of Defendants' motion.

**Defendants Dukate and Escobar**

Defendants first argue that 42 U.S.C. § 233(a) precludes Plaintiff's *Bivens* claims against Defendants Dukate and Escobar as Public Health Service ("PHS") employees who were at all times acting within the scope of their employment. *See* Defs.' MSJ at 7–8. Plaintiff does not address this argument. The Court agrees with Defendants.

Under the Public Health Service Act of 1944 ("PHSA"), the remedies against the United States provided under the FTCA are the exclusive means of resolving tort complaints involving individual PHS employees acting within the scope of their employment. *See* 42 U.S.C. § 233(a); *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) (42 U.S.C. § 233(a) "makes the [FTCA] the

---

[5] Importantly, in connection with the instant Motion for Summary Judgment, and in accordance with Local Rule 56(b), counsel for Defendants served Plaintiff with, *inter alia*, the Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, which includes the complete text of Rule 56(d). *See* Certificate of Service of *Pro Se* Notice and Summary Judgment Filing, ECF No. 45.

[6] The Court recognizes, as Defendants suggest in the alternative, that the Court could authorize an "expedited initial period of discovery" confined to the exhaustion issue. *See* Defs.' MSJ at 2. However, it appears that such discovery "would not have been relevant or necessary," insofar as Defendants' motion attaches Plaintiff's entire BOP grievance history, and Plaintiff himself has not disputed the authenticity of Defendants' exhibits or otherwise sought discovery on the issue. *See Haocheng v. YouTube, Inc.*, No. 3:23-CV-513 (SVN), 2024 WL 1330116, at *4 (D. Conn. Mar. 28, 2024) (converting motion to dismiss into motion for summary judgment, and finding that additional discovery would not have been relevant or necessary where plaintiff's claims turned on the undisputed terms of a contract).

exclusive remedy for specified actions against members of the [PHS]"). It follows, and the Supreme Court has expressly held, that in cases involving allegations of medical negligence, "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct," including those brought pursuant to *Bivens*. *Hui v. Castaneda*, 559 U.S. 799, 806 (2010).

In support of the instant motion, Defendants Dukate and Escobar have declared, under penalty of perjury, that they are PHS employees who were working at FCI Danbury at all times relevant to Plaintiff's claim against them; Dukate as a Health Services Administrator, and Escobar as a Family Nurse Practitioner. *See* Defs.' Local Rule 56(a)(1) Statement, ECF No. 44, Ex. Nos. 1, 2. Having no evidence to the contrary, the Court accepts Defendants' declarations as true.[7] *See* D. Conn. L. Civ. R. 56(a)(3); *Hui*, 559 U.S. at 811 ("proof of scope is in most § 233(a) cases established by a declaration affirming that the defendant was a PHS official during the relevant time period.").

Additionally, the Court finds—and Plaintiff does not dispute—that Defendants Dukate and Escobar were acting within the scope of their employment. *See* FN 7, *supra*. "Under 42 U.S.C. § 233, [defendant]'s scope of employment is determined by the "'law of the place,'" *i.e.*, the law of the state in which the alleged tort occurred. *See Agyin v. Razmzan*, 986 F.3d 168, 171 (2d Cir. 2021). In Connecticut, "[i]n determining whether an employee has acted within the scope of employment, courts look to whether the employee's conduct: [1] occurs primarily within the

---

[7] These averments are also entirely consistent with Plaintiff's Complaint, in which he alleges "Defendant Health Services Administrator Dukate is the head of the health services department in FCI Danbury and oversees all operations of the medical department," and that "Defendant P.A. Werner Escobar was at all times relevant Plaintiff's primary health care provider and oversaw directly all of Plaintiff's medical care." *See* ECF No. 1 at ¶¶ 9, 11.

9

employer's authorized time and space limits; [2] is of the type that the employee is employed to perform; and [3] is motivated, at least in part, by a purpose to serve the employer." *Harp v. King*, 266 Conn. 747, 782–83 (2003). Here, the Court agrees with Defendants that, under these circumstances, the scope of employment inquiry is sufficiently "clear cut." *See* Defs.' MSJ at 8 (citing *Harp*, 266 Conn. at 783). Indeed, Plaintiff's claim unquestionably arises from Defendants Dukate and Escobar's provision of medical care while working at FCI Danbury as Health Services Administrator and Family Nurse Practitioner, respectively.

Thus, because Defendants Dukate and Escobar were, at all times relevant, PHS employees performing medical or related functions within the scope of their employment, the Court finds that Plaintiff's *Bivens* claim against them is barred by 42 U.S.C. § 233(a).

**Exhaustion of Administrative Remedies**

All three Defendants next argue that they are entitled to summary judgment because the undisputed facts establish that Plaintiff failed to properly exhaust his administrative remedies before commencing this action. Defs.' MSJ at 9–11. In response, Plaintiff asserts that he did exhaust his administrative remedies, while further purporting to describe the various ways in which prison officials intentionally held up his administrative grievance process and otherwise failed to provide timely responses to his grievance forms. *See* ECF No. 48, 52. The Court agrees with Defendants.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust all available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted"). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Critically, the PLRA requires "proper exhaustion," *i.e.*, the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined, and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211. Moreover, prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("the law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). In addition, exhaustion of administrative

remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir. 2001); *see also Girard v. Chuttey*, 826 F. App'x 41, 44–45 (2d Cir. 2020) (inmate failed to exhaust administrative remedies because he commenced action in district court before appeal was decided or response period elapsed).

Ad hoc or purported special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. Indeed, an inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, 578 U.S. 632, 635 (2016). "[A]vailability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted). In *Ross*, the Supreme Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643. "[T]he three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided

by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Under BOP's Administrative Remedy Program, an inmate must first try to resolve the issue informally with prison staff. 28 C.F.R. § 542.13. From there, if the issue is not resolved, the inmate may submit a request on the "BP-9" form to the Warden. 28 C.F.R. § 542.14. If the inmate is dissatisfied with the Warden's response, he may appeal to the appropriate BOP Regional Director on form "BP-10." 28 C.F.R. § 542.15(a). If the inmate still is dissatisfied, he may appeal to the OGC using form "BP-11." *Id.* All requests and appeals are considered filed on the date they are logged into SENTRY as received. 28 C.F.R. § 542.18. An administrative appeal is deemed finally exhausted when it has been considered by the OGC in the BOP Central Office. *See* C.F.R. § 542.15; *see also South v. Licon-Vitale*, No. 3:19-CV-1763 (VLB), 2020 WL 3064320, at *1 (D. Conn. June 9, 2020). The Warden is required to respond within twenty days, the Regional Director within thirty days, and the OGC within forty days. *Id.* If the inmate does not receive a response within the time permitted, he may consider the absence of a response a denial and proceed to the next step in the process. *Id.*

As relevant here, mandatory exhaustion of BOP administrative remedies applies to a claim for deliberate indifference to medical needs. *See, e.g.*, *Baez v. Parks*, No. 02-CV-5821 (PKC) (DF), 2004 WL 1052779, at *4 (S.D.N.Y. May 11, 2004) (deliberate indifference claim may proceed only if inmate has exhausted administrative remedies).

Plaintiff's Failure to Exhaust

It is undisputed that on November 21, 2023, Plaintiff filed a BP-9 form with the Warden at FCI Danbury regarding Wi-Fi monitoring of his implanted cardiac device, and that on January 8,

13

2024, following receipt of the Warden's response, Plaintiff filed a BP-10 appeal to NERO.[8] *See* Defs.' Local Rule 56(a)(1) Statement, ECF No. 44, Ex. 3 at 3; Ex. 3(B) at 3, 28, 31. At that time, NERO's deadline to respond was February 7, 2024. *See* 28 C.F.R. § 542.18. However, SENTRY records reveal that NERO was given a 30-day extension, which was printed and delivered to Plaintiff on February 8, 2024. NERO's new response deadline was March 8, 2024. *Id*. Notwithstanding, it is undisputed that Plaintiff filed his BP-11 appeal to OGC on February 6, 2024, *before* both the initial NERO response deadline as well as the extended response deadline. Thereafter, Plaintiff's BP-11 appeal was rejected as premature because NERO's BP-10 response was not due until March 8, 2024. *See id.* at 4, 33. Accordingly, Plaintiff was directed to refile his appeal to OGC after receipt of the NERO response or expiration of the allotted response time. *See id.* There is no record of Plaintiff refiling his BP-11 appeal, and he does not assert that he did. Indeed, prior to the extended deadline for NERO to respond, on February 28, 2024, Plaintiff commenced this action. *See id*.

While Plaintiff's opposition asserts that he did in fact exhaust his administrative remedies, the aforementioned undisputed facts conclusively demonstrate that he did not. Specifically, Plaintiff prematurely commenced this action in the middle of the exhaustion process. Before any response from NERO was even due, he filed his BP-11 appeal. When that was rejected as premature, he again did not await a response from NERO so that he could refile the BP-11 as directed. Rather, he filed the instant lawsuit. For this reason alone, Defendants are entitled to summary judgment. *See Amador*, 655 F.3d at 96.

---

[8] The Court observes that Plaintiff's BP-10 appeal to NERO appears to have been untimely, insofar as it was filed more than 20 days after receipt of the Warden's response to Plaintiff's BP-9 appeal. 28 C.F.R. § 542.15(a). Nevertheless, Plaintiff's BP-10 appeal was not rejected as untimely. *See* Defs.' Local Rule 56(a)1 Statement, ECF No. 44, Ex. 3 at 3.

Plaintiff's opposition, construed liberally, suggests that prison officials knowingly caused his grievance process to become time barred. *See* ECF No. 52. But Defendants do not argue that Plaintiff's administrative grievances were rejected as time barred; rather, they contend that Plaintiff failed to *complete* every step of the grievance process before filing this lawsuit. To the extent Plaintiff's opposition could be read to suggest that the BOP administrative grievance process was "unavailable" to him, the Court is not persuaded. *See Ross*, 578 U.S. at 643. It is undisputed that Plaintiff has filed 36 requests for administrative remedies while in federal custody, 14 of which relate to events that occurred at FCI Danbury, and that he completed all but one step of BOP's grievance process in connection with the incident at issue in this case. *See* Defs.' Local Rule 56(a)(1) Statement, ECF No. 44, Ex. 3 at ¶¶ 7–8.

Plaintiff also appears to contend that prison officials' untimely responses to his BP-8 and/or BP-9 forms somehow invalidate the entire BOP administrative remedy program. *See* ECF No. 48 at 2, 4. While Plaintiff may be correct that at least the Warden's response to his BP-9 form was untimely, this does not relieve Plaintiff of his obligation to complete the BOP's grievance process. Once the Warden's deadline had passed without a response, Plaintiff's recourse was to file his BP-10 appeal. *See* 28 C.F.R. § 542.18. That Plaintiff waited until receiving the Warden's response before filing his BP-10 form is of no moment.

Finally, Plaintiff appears to rely on the general delay he encountered in having his grievance process completed and seeks to be excused for bringing the suit when he did. The fact that NERO received an extension, as is permitted and contemplated under the exhaustion process, does not, of itself, relieve Plaintiff of his obligations. While he was clearly, and perhaps justifiably frustrated, his impatience does not render the process unavailable or otherwise eliminate the

15

exhaustion requirement.

And although Plaintiff appears to assert that he never received NERO's notice of extension of time, *see* ECF No. 48 at 4, this too is immaterial and unavailing. Plaintiff has not submitted any admissible evidence in support of this contention (*e.g.*, a declaration or affidavit), but even if he had, as discussed above, Plaintiff filed his appeal to OGC on February 6, 2024, one day *before* NERO's original response deadline of February 7, 2024. *See* 28 C.F.R. § 542.18. In other words, even accepting that Plaintiff did not receive notice of NERO's extension, his appeal to OGC was still premature.

For all of the foregoing reasons, the Court finds that there is no genuine issue of material fact as to whether Plaintiff exhausted his administrative remedies prior to filing the instant lawsuit. He did not. Defendants are therefore entitled to summary judgment.[9]

**Conclusion**

Defendants' Motion for Summary Judgment (ECF No. 43) is **GRANTED**.[10] Accordingly, the Clerk of the Court is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** this 3rd day of October 2024 at Bridgeport, Connecticut.

                                                    /s/ *Kari A. Dooley*
                                                    KARI A. DOOLEY
                                                    UNITED STATES DISTRICT JUDGE

---

[9] Plaintiff's opposition also attaches grievance forms pertaining to issues wholly unrelated to the remaining claims in this case (*e.g.*, Plaintiff's alleged assault on October 11, 2023). *See* ECF No. 48. Plaintiff's efforts to exhaust his administrative remedies as to separate, unrelated grievances have no bearing on the merits of the instant motion.

[10] Defendants also argued that the instant Motion for Summary Judgment tolled their deadline to file a responsive pleading, and further that "the *Bivens* remedy does not extend to this case under *Egbert v. Boule*, 596 U.S. 482 (2022)." *See* Defs.' MSJ at 3–4. Because the Court is granting Defendants' motion on other grounds, it need not reach these alternative arguments.